# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**DOLORES H. SAIZ,**

        Plaintiff,

vs.                                   **No. CIV 01-1072 WPJ/LCS**

**JO ANNE B. BARNHART,**[1]
**Commissioner,**
**Social Security Administration,**

        Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court upon Plaintiff's Motion to Reverse or Remand the Administrative Decision filed March 15, 2002 (*Doc. 9*). The Commissioner of the Social Security Administration issued a final decision denying the Plaintiff her claim for Supplemental Security Income. The United States Magistrate Judge, having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, finds that the motion is well-taken and recommends that it be GRANTED.

## PROPOSED FINDINGS

### I. PROCEDURAL RECORD

1.        Plaintiff Dolores Saiz filed an application for a Supplemental Security Income with the

---

[1] Effective November 14, 2001, Jo Anne B. Barnhart was appointed to serve as Commissioner of the Social Security Administration. Pursuant to FED. R. CIV. P. 25 (d), Jo Anne B. Barnhart, Commissioner of the Social Security Administration, is substituted for Larry G. Massanari, Acting Commissioner of the Social Security Administration, as the defendant in this action.

Social Security Administration on August 11, 1997 alleging a disability since June 7, 1995 due to a shattered ankle and heel. *See* R. at 87. At the time of her application, the Plaintiff was 32 years of age. *See* R. at 87. The Plaintiff's application was denied at the initial level on June 17, 1998, *see* R. at 67, and at the reconsideration level on July 30, 1998, *see* R. at 69. Plaintiff appealed the denial of her claim by filing a Request for Hearing by Administrative Law Judge on August 10, 1998. *See* R. at 80.

    2.    The Commissioner's ALJ conducted a hearing on Ms. Saiz' application on December 10, 1998. *See* R. at 33. The ALJ made the following conclusions according to the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f) and *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993): the claimant had not engaged in substantial gainful activity since June 7, 1995; the severity of the claimant's impairments did not meet or equal a listed impairment; the claimant had a "severe" impairment or combination of impairments due to a status post right foot fracture; the claimant's subjective complaints and functional limitations, including pain were not supported by the evidence as a whole in the disabling degree alleged and therefore lacked credibility; and the claimant had a residual functional capacity for at least light work which included work activities related to her past relevant work. *See* R. at 18-27.

    3.    The ALJ entered his decision January 18, 1999. *See* R. at 18-27. Thereafter, the Plaintiff filed a request for review in March of 1999 to the Appeals Council. *See* R. at 13. On August 29, 2001, the Appeals Council issued its decision denying her request for review and upholding the final decision of the ALJ. *See* R. at 4. The Plaintiff subsequently filed her complaint for court review of the ALJ's decision on September 14, 2001. (*Doc. 1*).

## II. STANDARD OF REVIEW

4. The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards. *See Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (citation omitted)). A decision of an ALJ is not supported by substantial evidence if other evidence on the record overwhelms the evidence supporting the decision. *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

5. In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity. *See* 42 U.S.C. §423(d)(1)(A); *Thompson*, 987 F.2d at 1486. The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. *See* 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *See Thompson*, 987 F.2d at 1487.

6. At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the

Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *See id.*

### III. ADMINISTRATIVE RECORD

7. The record indicates that Ms. Saiz was involved in a motor vehicle accident in June of 1995. *See* R. at 133. In that accident, her primary injury was a fracture of the right calcaneus (heel) bone. *See id*. Following the accident, Ms. Saiz had continued physical therapy which did not provide much relief. She also had a cortisone injection in the right foot which seemed to make her symptoms worse. *See id*. In November of 1996, Ms. Saiz was seen by Dr. Michael Federico. *See* R. at 125. She expressed to Dr. Federico during his evaluation that she was in excruciating pain. *See id*. He diagnosed the Plaintiff with severe progressive degenerative post traumatic arthritis of the right ankle, right sub talar, calcaneal cuboid, and talo navicular joints, all of which comprise the entire right foot region. *See id*. Dr. Federico recommended surgery, placed her on a non-steroid anti-inflammatory medication and referred her to Dr. Richard Miller. *See* R. at 126.

8. Dr. Miller evaluated Ms. Saiz in January of 1997. Ms. Saiz again complained of pain in her right leg and shin. *See* R. at 129. She also noted to the doctor that her pain usually starts about half-way through the day and inhibits her activities. However, it does not cause limping and is relieved with a hot shower. *See id*. Dr. Miller observed that Ms. Saiz had full range of motion of her right toes and that her stance appeared to be normal. *See id*. Dr. Miller discussed the possibility of surgery and noted that the Plaintiff was interested but not until August of 1997. *See id*. He also noted that Ms. Saiz was to see him again in August of 1997 for a follow-up. *See id*.

9. The next entry in the record relating to a physician's visit with a full physical

evaluation was not until August of 1998. *See* R. at 133. The Plaintiff was evaluated by Frank Jones, M.D. Ms. Saiz complained of lower back pain, some neck tightness and headaches in addition to her right foot pain. *See id*. Dr. Jones confirmed no tenderness or muscle spasm in the Plaintiff' neck, full function of both arms and hands including full range of motion of both wrists, elbows and shoulders. *See* R. at 134. He also noted that her back was unremarkable with normal spinal curvature and full range of motion. *See id*. On examination of her right leg, Dr. Jones acknowledged that the Plaintiff has a "mild deformity of the right hind foot with diffuse tenderness [and] mild decreased strength in the right foot and lower leg." *See id*. However, Dr. Miller ascertained that she has full range of motion of the right knee and hip in addition to her left leg and hip. *See id*.

10. Dr. Jones diagnosed the Plaintiff with chronic right foot pain, status post fracture of the calcaneus in June of 1995, evidence of subtalar joint arthritis, low back pain with no objective findings, and probable tension headaches. *See* R. at 134. The doctor concluded that the Plaintiff "could do limited lifting with frequent lifting up to 20 lbs. and occasional lifting up to 30 lbs. . . . she could walk up to 15 minutes at a time and up to two hours a day. . . . she could stand up to 50 minutes at a time and up to two hours a day . . . . and she should do minimal stair climbing and no ladder climbing." *See* R. at 135. Dr. Jones written evaluation also indicated that Ms. Saiz drove herself to the appointment. *See* R. at 134. A week later, Dr. Aide L. Recalde completed a residual functional capacity assessment on the Plaintiff. *See* R. at 136. Dr. Recalde concluded that the claimant can lift 20 pounds occasionally, 10 pounds frequently, can stand/walk for 2 hours and sit for 6 hours in an 8 hour day. *See* R. at 137.

11. The following summary represents questions asked by the ALJ at Ms. Saiz' hearing

5

on December 10, 1998. The Plaintiff testified that she used to work for Keller's, a deli, MCI, Agnosia De Santa Fe, an incense store, Motorola and K-Mart and performed such duties as customer service, phone sales, and fine tuning for cellular phone parts. *See* R. at 42-46. She stopped working in 1984 or 1985 due to her first pregnancy. *See* R. at 45. She currently is the sole care provider for her two children and receives child support, aid to dependant families and food stamps. *See* R. at 37-38. Ms. Saiz testified that her parents and neighbors help her in caring for her children. *See* R. at 39. She is unable to do any physical house chores and is unable to do any kind of activities with her children that involve long periods of sitting or walking. *See id.* at 47.

      12.     Ms. Saiz stated that her shattered heel and back pain prevent her from working. *See* R. at 46. She also stated that she experiences headaches, blurred vision and depression but has not gone to a doctor for evaluations of those symptoms. *See* R. at 46. Ms. Saiz testified that she can sit or stand for approximately 15 to 20 minutes without pain and that she could carry approximately ten pounds across the room. *See* R. at 52-53. Her current medications include "Doan's" for back pain and Tylenol for her headaches. *See* R. at 47. Ms. Saiz noted that she used to go to physical therapy but stopped going because she thought it was not helping. *See* R. at 50. In addition, the Plaintiff testified that she has difficulty standing all day and must lie down and elevate her ankle due to pain and pressure in her leg. *See* R. at 54.

      13.     The vocational expert also asked the Plaintiff questions concerning her work history. The Plaintiff testified that her job at Motorola consisted of sitting and carrying approximately 15 to 20 pounds. *See* R. at 58. During her time at the incense store, she would sit the entire 8 hour work day and lift approximately 25 pounds. *See id.* She also noted that when she worked at MCI she would sit most of the day. *See id.*

14. In addition to Ms. Saiz' testimony, the ALJ called a vocational expert and posed the following hypothetical question:.[2] "I want you to assume that she can lift 20 pounds occasionally; ten pounds frequently. That she can stand up to two hours in an eight hour work shift. Or walk up to two hours in an eight hour work shift. Walking she can walk a maximum of 15 minutes until she has to stop. And standing she can stand up to 50 minutes. That she can sit up to six hours in an eight hour work day with normal breaks. That she should never climb a rope, a ladder or scaffolding. That she can occasionally climb stairs, ladders. Balance, stoop, kneel, crawl and crouch." *See* R. at 61. The VE responded that the individual in that hypothetical could work doing fine tuning of cellular phones, which is semi-skilled and light work. *See* R. at 62.

## IV. DISCUSSION

15. The Plaintiff raises essentially four arguments in support of her Motion to Reverse or Remand the Administrative Agency Decision. First, Ms. Saiz argues that the ALJ erred in his assessment that her residual functional capacity. Second, the ALJ incorrectly assessed that she could perform her past work. Third, the ALJ's finding that her complaints of disabling pain were not credible is not supported by substantial evidence. And lastly, the ALJ erred by failing to include her need to elevate her leg in the disability equation.

### Pain Analysis

16. Plaintiff contends that the ALJ failed to perform the proper analysis of the

---

[2] The ALJ premised his questions with Ms. Saiz' personal and educational history. The hypothetical individual was 33 years old, disabled from 1995, and a high school graduate with one semester of advance education. *See* R. at 61.

Plaintiff's pain condition. The ALJ adopted Dr. Recalde's findings and found that the "claimant's pain is moderate and alleviated with medication and activity limited to light work. It does not reduce her RFC below the wide range of light work." *See* R. at 24.

17. In evaluating a claim of disabling pain, the appropriate analysis considers (1) whether there is objective medical evidence of a pain producing impairment, (2) whether there is a loose nexus between this objective evidence and the pain, and (3) whether, in light of all the evidence, both objective and subjective, the pain is in fact disabling. *See Glass v. Shalala*, 43 F. 3d 1392, 1395 (10th Cir. 1994) (citing *Luna v. Bowen*, 834 F. 2d 161, 163 (10th Cir. 1987)).

18. The ALJ properly applied these factors in this case. The ALJ stated that:

> [t]he shattered heel and back pain are [the Plaintiff's] biggest problems. Unable to stand or walk for a long time. Sitting too long also bothers her. Had physical therapy. No current physician. Has constant headaches and blurred vision. Gets depressed. No drug use . . . . Can sit 20 minutes, stand 15 minutes, is largely homebound. Must elevate her leg periodically. *See* R. at 22.

The ALJ also noted that

> The objective medical evidence at bar contains indication of muscle atrophy, swelling and premature aging in the right foot and leg. There are no neurological dysfunctions or deteriorations . . . . Regarding the use of assistive devices, claimant does not use a cane to walk about . . . . claimant has good daily activities, cares for her personal needs, takes short walks and her prescribed course of treatment is physical therapy and exercise. . . . [In addition], [t]here is no longitudinal medical history for treatment of disabling pain. *See* R. at 23-24.

19. The ALJ's findings acknowledge that the Plaintiff's complaints of pain. However, the ALJ emphasized the lack of connection between her pain and her ability to function at a level of light work. First, with respect to her foot and leg pain, the ALJ's reliance on Dr. Recalde's evaluation was proper. Dr. Recalde concluded that the claimant can lift 20 pounds occasionally, 10 pounds frequently, can stand/walk for 2 hours and sit for 6 hours in an 8 hour day. *See* R. at

8

137. There is nothing in the medical record to rebut his assessment. There is nothing in the record to suggest that the Plaintiff's pain would interfere in her ability to perform light work.[3] The record simply does not support a connection between her previous work, described as light work, and her complaints of pain. In addition, the Plaintiff had three doctor appointments within a two year period.

20. Second with respect to the Plaintiff's headaches, blurred vision, and depression, there is no objective medical evidence supporting her complaints. Subjective complaints alone are insufficient to establish disabling pain. *See Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir.1990) (per curiam).

21. If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Secretary's decision stands and Plaintiff is not entitled to relief. *See e.g., Hamilton v. Secretary of Health & Human Servs.*, 961 F. 2d 1495, 1497-1500 (10th Cir. 1992). I find that the ALJ supported the Plaintiff's pain determination with substantial evidence. There is nothing in the record to contradict the evidence relied upon in the ALJ's opinion. In addition to the ALJ's pain determination being supported with substantial evidence, the ALJ's credibility determination with respect to the Plaintiff's complaint of pain was also properly made. While it is true that this Court generally defers to credibility determinations of the ALJ, such deference is not absolute. *See Thompson v. Sullivan*, 987 F. 2d 1482, 1490 (10th Cir. 1993).

### **Hypothetical Question**

22. Plaintiff next argues that the ALJ's hypothetical question to the VE did not

---

[3] Light work involves lifting no more than twenty pounds at a time, with frequent lifting and carrying of objects weighing up to ten pounds. *See* 20 C. F. R . §§ 404.1567(b); 416.967(b).

accurately reflect her impairments. Specifically, the Plaintiff claims the ALJ did not state "with precision" her need to alternate sitting and standing throughout the day.

23. After reviewing the medical record in its entirety. I find that the hypothetical question posed to the VE was well supported and thus properly given. Hypothetical questions posed to a VE may only reflect impairments and limitations supported by the record as found by the ALJ. *See Decker v. Chater*, 86 F. 3d 953, 955 (10th Cir. 1996). The ALJ posed the following question to the VE: "I want you to assume that she can lift 20 pounds occasionally; ten pounds frequently. That she can stand up to two hours in an eight hour work shift. Or walk up to two hours in an eight hour work shift. Walking she can walk a maximum of 15 minutes until she has to stop. And standing she can stand up to 50 minutes. That she can sit up to six hours in an eight hour work day with normal breaks. That she should never climb a rope, a ladder or scaffolding. That she can occasionally climb stairs, ladders. Balance, stoop, kneel, crawl and crouch." *See* R. at 61. The VE responded that the individual in that hypothetical could work doing fine tuning of cellular phones, which is semi-skilled and light work. *See* R. at 62.

24. The ALJ's hypothetical question to the VE adequately reflected the nature and severity of Plaintiff's impairments as borne out of medical record. Specifically, one of the Plaintiff's treating physicians noted within his evaluation that the Plaintiff "could do limited lifting with frequent lifting up to 20 lbs. and occasional lifting up to 30 lbs. . . . she could walk up to 15 minutes at a time and up to two hours a day. . . . she could stand up to 50 minutes at a time and up to two hours a day . . . . and she should do minimal stair climbing and no ladder climbing." *See* R. at 135. This physician never stated she could not work or that she needed to sit and stand in

varying intervals. In addition, not one of the three physicians who evaluated Ms. Saiz concluded that she could not work.

25. In addition, the ALJ relied not only on the vocational expert's opinion at the hearing, but also considered the record as a whole in order to determine her ability to do light work. *See* R. at 20-22. The ALJ stated in support of his RFC assessment that the "physical examinations of claimant show she is a well-nourished, well-developed, 33 year old women in no acute distress. All systems are within normal limits except for the status post right foot fracture. Dr. Recalde says claimant can lift up to 20 pounds occasionally and 10 pounds frequently, stand/walk 2 hours and sit 6 hours in an 8 hour day. Claimant walks and exercises on a daily basis. She has good daily activities, caring for her child." *See* R. at 20.

26. All of this evidence supports the ALJ's hypothetical question to the VE. Not only were there treating and examining physicians who made similar conclusions, but there is absolutely nothing in the record to rebut their findings. Therefore, the ALJ's hypothetical questions were proper and the VE's opinion that a substantial number of jobs existed in the national economy which Plaintiff could perform is supported by substantial evidence.

## Past Relevant Work

27. The Plaintiff claims that the ALJ erred in determining whether she could return to her past relevant work as either a phone tuner or telemarketer. Step four of the sequential analysis is comprised of three phases. *See Winfrey v. Chater*, 92 F. 3d 1017, 1023 (10th Cir. 1996). In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity. *See id.* (citing *Henrie v. U. S. Dept of Health & Human Servs.*, 13 F. 3d 359, 361 (10th Cir. 1993)). In the second phase, the ALJ must determine the physical and mental demands of the

claimant's past relevant work. *See id.* In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. *See id.*

28. At the second phase of the step four analysis, the ALJ is required to make findings regarding the physical and mental demands of the claimant's past relevant work. To make these findings, the ALJ must obtain adequate "factual information about those work demands which have a bearing on the medically established limitations." *Winfrey*, 92 F. 3d at 1023. In this case, the ALJ failed to adequately investigate the physical demands of Ms. Saiz' past relevant work as a telemarketer and/or a phone tuner, which the ALJ found she could still do. For example, there were no questions posed to the Plaintiff or the VE concerning the amount of sitting verses the amount of standing for either job. I cannot find anything in the record that identifies the work requirements for a telemarketer and/or a phone tuner. Because the ALJ's inquiry in this second phase was faulty, a proper conclusion could not be made at the final phase, i. e., whether the plaintiff has the ability to meet the job demands found in phase two despite the mental and/ or physical limitations found in phase one. *See Winfrey*, 92 F. 3d at 1023 (citing *Henrie v. United States Dept of Health & Hum. Servs.*, 13 F. 3d 359, 361 (10th Cir. 1993). Under these circumstances, a remand is required under *Henrie* and *Winfrey*. Therefore, I conclude that this case should be remanded for this issue only. The ALJ should also take into account Dr. Federico's recommendation regarding the Plaintiff's need to elevate her leg three to four times a day. *See* R. at 11.

## RECOMMENDED DISPOSITION

The ALJ did not apply the correct legal standards. I recommend that the Plaintiff's Motion to Reverse and Remand Administrative Decision, filed March 15, 2002 (*Doc. 9*), should be **GRANTED**. This case should be remanded to the Commissioner for consideration of the Plaintiff's past relevant work. The ALJ should specifically determine the physical and mental demands of the claimant's past relevant work pursuant to *Winfrey v. Chater*, 92 F. 3d 1017, 1023 (10th Cir. 1996). If necessary, the ALJ should proceed to Step 5. Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to §636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**